**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT PETERSON, | : | |
| a/k/a Parrish Chandler, | : | |
| | : | Civil Action No. 10-6477 (JBS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOSEPH BONDISKEY,[1] | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES:**

Plaintiff pro se
Robert Peterson
Atlantic County Justice Facility
Mays Landing, NJ 08330

---

[1] The Docket incorrectly reflects two additional defendants: Detective Sgt. Kenneth Gallagher and Det. Christopher Korobellis. Detectives Gallagher and Korobellis are referenced in the Complaint only with respect to Plaintiff's disclosures regarding previously-filed lawsuits. They are not named as defendants in this action. The Clerk of the Court will be directed to correct the Docket to reflect that Warden Joseph Bondiskey is the only named Defendant.

In addition, the Court notes that Plaintiff's submission to the Court includes a second "Complaint" which purports to name as the sole defendant, in the caption, Warden Donald Lombardo of Cape May County Correctional Facility, but in the text of the Complaint names Warden Bondiskey of the Atlantic County Justice Facility as the sole defendant. The Court construes the reference to Warden Lombardo, in the caption, as a clerical error. In any event, there are no factual allegations against Warden Lombardo and it does not appear that Plaintiff could satisfy the joinder requirements for asserting claims, in one action, against the wardens of two separate correctional facilities. See Fed.R.Civ.P. Rules 18, 20.

**SIMANDLE**, District Judge

Plaintiff Robert Peterson, a prisoner confined at Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that the showers are moldy, causing him to have an allergic reaction.  He also alleges that he takes medication for the allergic reaction.  Plaintiff alleges that it took approximately five weeks for him to receive food trays which did not contain beans, to which he was allergic.  Plaintiff alleges that he does not get enough fresh air in the yard.

2

Finally, Plaintiff alleges that he does not get to go to the law library.

The only named defendant is the Warden Joseph Bondiskey. Plaintiff seeks monetary damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some

4

complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

5

Therefore, after Iqbal, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  See Phillips, 515 F.3d
at 234-35.  As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  <u>ANALYSIS</u>

A.  <u>Claims Against the Warden</u>

The only named Defendant in this action is the Warden Joseph Bondiskey.

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-

7

91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Plaintiff's claims against the Warden appear to be based solely upon an untenable theory of vicarious liability. Accordingly, the claims against the Warden will be dismissed. In any event, as discussed more fully below, the Complaint fails to state a viable claim for violation of Plaintiff's constitutional rights.

B.   <u>Conditions of Confinement</u>

Plaintiff asserts that he does not get enough fresh air, that the showers are moldy,[2] and that it took approximately five weeks for the jail to begin serving him food trays that did not contain beans - to which he is allergic.[3]

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150  (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  <u>Hubbard</u>, 399 F.3d at 157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty

---

[2] Plaintiff alleges that the moldy showers caused him to have an allergic reaction, for which he has received medication.

[3] Plaintiff does not allege that he did not receive a diet that was otherwise adequate and nutritious during this period.

without due process of law, we think that the proper
inquiry is whether those conditions amount to
punishment of the detainee.  For under the Due Process
Clause, a detainee may not be punished prior to an
adjudication of guilt in accordance with due process of
law. ...

Not every disability imposed during pretrial
detention amounts to "punishment" in the constitutional
sense, however.  Once the government has exercised its
conceded authority to detain a person pending trial, it
obviously is entitled to employ devices that are
calculated to effectuate this detention. ...

A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,
that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees qua
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

10

would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

Here, the conditions of which Plaintiff complains are not sufficient to amount to punishment in violation of the Due Process Clause. Plaintiff admits that his allergic reaction to the moldy shower was treated. While he complains of being served a food to which he was allergic, beans, that lasted only for the first five weeks of his confinement. Plaintiff does not allege how often he was served beans, nor does he allege that he did not otherwise receive an adequate diet, nor does he allege that the remaining food at his meals was nutritionally inadequate if he skipped the beans that were served. Moreover, five weeks is not an inordinately long time for the jail staff to respond to Plaintiff's need for an alternate food to beans. Finally, the schedule of outdoor recreation once or twice per month does not state a claim for violation of due process. Neither does the combination of these conditions amount to punishment in violation of the Due Process Clause because, whether alone or in combination, these aspects of the jail environment do not rise to the level of "punishment" of a pretrial detainee.

11

C.   Access to the Law Library

Finally, Plaintiff alleges that he does not get to go to the law library.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need

12

in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant
actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense. ... [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a [non-
frivolous] legal claim. He might show, for example, that a
complaint he prepared was dismissed for failure to satisfy some
technical requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have known.
Or that he had suffered arguably actionable harm that he wished
to bring before the courts, but was so stymied by inadequacies of

the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

14

Here, Plaintiff has failed to allege any actual injury.
Plaintiff does not state what types of claims he needs access to
the law library to pursue.  To the extent such claims relate to
his criminal prosecution, Plaintiff does not state whether he is
represented by counsel.  To the extent such claims relate to
alleged civil claims of violations of his constitutional rights,
the Court notes that Plaintiff has filed several such civil
actions in this Court.  See, e.g., Peterson v. Korobellis, Civil
No. 09-6571; Peterson v. Cape May County Correctional Center,
Civil No. 10-0891; Peterson v. Herlihy, Civil No. 10-4756;
Peterson v. Rinkus, Civil No. 10-5316; Peterson v. Lombardo,
Civil No. 11-4713.

Accordingly, Plaintiff's raw allegation that he does not
receive enough time in the law library is not sufficient to state
a claim for violation of his constitutional right of access to
the courts.

V.   CONCLUSION

For the reasons set forth above, the Complaint will be
dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a
claim.[4]  However, because it is conceivable that Plaintiff may be

_____

[4] The Court notes that "'[g]enerally, an order which
dismisses a complaint without prejudice is neither final nor
appealable because the deficiency may be corrected by the
plaintiff without affecting the cause of action.' ...  The
dispositive inquiry is whether the district court's order finally

able to supplement his pleading with facts sufficient to overcome certain deficiencies described herein, the Court will dismiss this Complaint without prejudice to Plaintiff's right to file a motion for leave to file an amended complaint.[5]

An appropriate order follows.


 s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated: **December 12, 2011**

---

resolved the case."  Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules, within thirty (30) days of the entry of the accompanying order.

[5] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.